**WRIGHT LINING AND CONSTRUCTION CO., INC.,**
*Plaintiff–Appellee,*

v.

**TULLY CONSTRUCTION COMPANY, INC.,** *Defendant–Appellant.*

No. 00–7436.

United States Court of Appeals,
Second Circuit.

Feb. 13, 2001.

S. Mac Gutman, Gutman & Gutman Port, Washington, NY, for appellant.

Jerry L. Schutza, Houston, TX, for appellee.

Present STRAUB, POOLER, and SACK, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Appellant Tully Construction Company, Inc. ("Tully") appeals from a final judgment entered March 22, 2000 by the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge*) in favor of Appellee Wright Lining and Construction Company, Inc. ("Wright") and from two interlocutory orders entered on September 30, 1997 and July 8, 1998 denying motions to dismiss and for summary judgment.

Briefly stated, the facts of the case are as follows. In April 1993, Tully was awarded a general contract to cap one of several landfills located in Southampton, NY. The contract specified that Tully was to install a flexible plastic liner made of polyvinyl chloride ("PVC") over the landfill. Notwithstanding this directive, Tully requested that Southampton instead allow it to use a liner composed of high density polyethelene ("HDPE"). The town denied this request, ordering Tully in August 1993 to proceed with the project using a PVC liner. Tully appeared to comply with this order by subcontracting with Wright, who specialized in the installation of PVC liners. Upon receiving the subcontract, Wright immediately began preparation for the project, contracting with Watersaver Company, Inc. ("Watersaver") to fabricate the liner. According to Wright, Tully requested that Wright expedite the fabrication of the liner to meet approaching deadlines. In addition, Wright had Watersaver forward samples of the liner to Tully so that Southampton's consultants could perform tests on the product to ensure that it met the contract specifications. The general contract required that the PVC be tested and approved by the town prior to its installation. Southampton delegated responsibility for testing to a consultant, Dvirka and Bartilucci ("D & B"). In the meantime, however, Tully continued to press for substitution of an HDPE liner, ultimately convincing Southampton that either a PVC or HDPE liner would meet the specifications of the contract. Tully then hired Gundle Lining Construction Corporation to construct an HDPE liner that was installed on the landfill on October 25, 1993. Upon learning of this, Wright commenced this action for breach of contract.

During pretrial proceedings, Tully submitted motions to dismiss and for summary judgment. On September 30, 1997, the District Court granted Tully's motion for summary judgment on Wright's fraud claim, but otherwise denied Tully's motions. A subsequent summary judgment motion was denied on July 8, 1998. After a jury trial in the fall of 1999, the jury rendered a verdict on behalf of Wright, finding that Tully breached the subcontract, and awarded Wright $177,700 in damages. After the verdict, Tully moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a), 50(b) and 59 or, alternatively, for a new trial. The motion

was denied on March 24, 2000. This appeal followed.

■ On appeal, Tully principally makes three claims. First, Tully asserts that Wright's breach of contract claims are barred by a provision of the subcontract between the parties. Section 16 of the subcontract states in part that "the Subcontractor shall have and make no claim for damages for anticipated profits or for loss of profits ... because of the entire omission of any of the quantities of items stated in the 'Contractor's Proposal of the Construction Contract.'" Brief for Appellant at 21. Tully claims that this language precludes Wright from seeking damages when no part of Wright's PVC liner was used in the construction project. By its terms, this provision precludes only actions to recover profits due to non-use of anticipated materials. According to Wright, the clause does not apply to Wright's claims for recovery of costs incurred in fabricating the unused PVC liner. This provision is at best ambiguous as applied to a situation where a subcontractor's entire performance was eliminated in favor of a substitute subcontractor. The District Court's decision to allow the jury to resolve this ambiguity as an issue of fact was not in error. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993). Because Wright proffered evidence as to the meaning of Section 16, we will not disturb the jury's verdict rejecting Tully's reading of the provision.

■ Second, Tully challenges the sufficiency of the evidence supporting the jury verdict finding that Tully breached the subcontract with Wright. As a threshold matter, Wright claims that Tully failed to make a timely Fed.R.Civ.P. 50(a) motion, and that this failure prevents Tully from challenging the sufficiency of the evidence. Although not made with ideal clarity, the record indicates that Tully did make a timely 50(a) motion. The District Court recognized such a motion, stating that: "Defense has made a motion indicating in their judgment as a matter of law that the verdict in favor of plaintiff under either of the two causes of action could not stand...." Trial Transcript at 635 (Nov. 2, 1999). Therefore, Tully is not precluded from challenging the sufficiency of the evidence supporting the jury verdict.

■ "A party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden." *Norton v. Sam's Club,* 145 F.3d 114, 118 (2d Cir.1998). In this Circuit, the task of an appellate court reviewing a jury verdict is to determine "whether a finding in the party's favor can reasonably be based on the evidence." *McCarthy v. New York City Tech. Coll.,* 202 F.3d 161, 167 (2d Cir.2000). The court should not substitute itself for the jury by "weighing the credibility of the witnesses or otherwise considering the weight of the evidence," but instead should view the record in the light most favorable to the non-moving party. *Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 494 (2d Cir.1995); *United States v. 121 Allen Place,* 75 F.3d 118, 120–21 (2d Cir.1996).

Tully claims that the evidence proffered at trial does not support a finding that the PVC liner was approved by the town of Southampton. The record, however, demonstrates sufficient evidence to support a jury finding that the PVC liner had been approved. D & B contracted with Geo-Syntec Consultants to perform many of the tests on the PVC liner. In a letter dated September 10, 1993 to D & B, Geo-Syntec reported that "the submittal is somewhat incomplete but sufficient material is presented to determine that the proposed products are acceptable under the contract specifications." Brief for Appel-

lee at 10–12. Although GeoSyntec indicated that additional testing was required, it is reasonable to conclude from this letter that the PVC liner met specifications. In addition, monthly status reports prepared by D & B for September and October of 1993 stated that both the PVC and HDPE liners were "acceptable to be incorporated into the final cap system...." Brief for Appellee at 8. These reports were sent to Southampton's engineers. The jury, therefore, had substantial evidence supporting its verdict that the PVC liner met specifications and had been approved.[1]

■ Even accepting Tully's argument that the PVC liner had not been formally approved by Southampton, at minimum, the record supports a finding that the PVC liner had been approved by the consultants and was pending approval by Southampton at the time the HDPE liner was installed. There is ample evidence to support a jury finding that Wright was ready and willing to perform when Tully installed the HDPE liner. Wright had ordered the PVC liner, forwarded samples to Tully and Southampton's consultants, and demonstrated a willingness to move forward with installation of the product. Tully's preemptive actions to install the HDPE liner rendered performance by Wright impossible. The jury was within its authority to find that this constituted a material breach of the subcontract.

■ Finally, Tully claims that the District Court improperly allowed the testimony of Shirlene D'Amato, a Vice President of Watersaver, and the introduction of certain exhibits. Evidentiary rulings are left to the sound discretion of the trial court. Such rulings will be disturbed only upon a showing that the trial court clearly abused its discretion and that the ruling amounts to a manifest error. *Costantino v. David M. Herzog, M.D., P.C.,* 203 F.3d 164, 173–74 (2d Cir.2000); *Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 292 (2d Cir. 1999). Tully fails to meet this high standard. In its briefs, Tully fails to identify specific exhibits that were wrongly introduced into evidence and fails to cite any specific rule of law that was violated. Moreover, Tully fails to demonstrate why the introduction of this evidence constituted manifest error. The record indicates that the District Court weighed the effect of Ms. D'Amato's testimony and found little adverse effect on Tully. *See* Trial Transcript at 530–54 (Nov. 2, 1999). As Tully has provided no reason why the District Court's ruling was an abuse of discretion, we reject Tully's request for a new trial.

For the reasons set forth above, we AFFIRM the judgment of the District Court.

---

1. Tully also claims that the PVC liner did not and could not meet the contract specifications because as reported by a supplier for Watersaver, the PVC liner's "Mullen Burst" value did not meet the contract specifications. However, evidence introduced by Wright and uncontroverted by Tully indicates that the Mullen Burst value required by the contract was not technologically possible for any polyester geotextile. More important, however, is the fact that the liner was later approved by D & B which had the product tested and found it to meet contract specifications. Tully's argument that PVC liner could not meet contract specifications thus fails.