**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN ARMSTRONG; JAMES
AMAURIC; RICHARD PONCIANO;
JACK SWENSEN; BILLY BECK; JUDY
FENDT; WALTER FRATUS; GREGORY
SANDOVAL; DARLENE MADISON;
PETER RICHARDSON; STEVEN HILL;
DAVID ROSE; DAVID BLESSING; ELIO
CASTRO; ELMER UMBENHOWER;
RAYMOND HAYES; GENE
HORROCKS; KIAH MINCEY; CLIFTON
FEATHERS; WILLIE JOHNSON; DAVID
BADILLO; JAMES SIMMONS; FLORA
ABRAMS; JOEY GOUGH; TIMOTHY
WHISMAN,
              *Plaintiffs-Appellees*,

              v.

EDMUND G. BROWN, JR.; MICHAEL
MINOR; MATTHEW L. CATE; DIANA
TOCHE; CHRIS MEYER; KATHLEEN
DICKINSON; ROBERT AMBROSELLI,
              *Defendants-Appellants*.

No. 12-16018

D.C. No.
4:94-cv-02307-
CW

JOHN ARMSTRONG; JAMES
AMAURIC; RICHARD PONCIANO;
JACK SWENSEN; BILLY BECK; JUDY
FENDT; WALTER FRATUS; GREGORY
SANDOVAL; DARLENE MADISON;
PETER RICHARDSON; STEVEN HILL;
DAVID ROSE; DAVID BLESSING; ELIO
CASTRO; ELMER UMBENHOWER;
RAYMOND HAYES; GENE
HORROCKS; KIAH MINCEY; CLIFTON
FEATHERS; WILLIE JOHNSON; DAVID
BADILLO; JAMES SIMMONS; FLORA
ABRAMS; JOEY GOUGH; TIMOTHY
WHISMAN,
                *Plaintiffs-Appellees*,

                    v.

EDMUND G. BROWN, JR.; MICHAEL
MINOR; MATTHEW L. CATE; DIANA
TOCHE; CHRIS MEYER; KATHLEEN
DICKINSON; MARGARITA PEREZ,
                *Defendants-Appellants*.

No. 12-17198

D.C. No.
4:94-cv-02307-
CW

OPINION

Appeals from the United States District Court
for the Northern District of California
Claudia Wilken, Chief District Judge, Presiding

No. 12-16018
Argued and Submitted
September 5, 2012—San Francisco, California

No. 12-17198
Submitted September 27, 2013[*]

Filed October 4, 2013

Before: Stephen Reinhardt, A. Wallace Tashima,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Reinhardt

## SUMMARY[**]

### Prisoner Civil Rights

In an action initiated in 1994 by disabled prisoners and parolees seeking disability accommodation under the Americans with Disabilities Act and the Rehabilitation Act, the panel (1) affirmed the district court's August 28, 2012 orders which required California state officials to disseminate and implement a previously negotiated County Jail Plan for disabled prisoners and parolees, and (2) dismissed as moot an appeal from the district court's April 2012 orders.

Defendant state officials asserted that a narrow portion of a class of disabled state prisoners and parolees was no longer eligible to benefit from the district court's remedial orders

---

[*] The panel unanimously concludes that this appeal is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

due to amendments to California Penal Code § 3056, which were designed to ameliorate overcrowding in state prisons by placing certain parolees in county facilities.  The panel held that although § 3056 altered the balance of control between the state and its counties somewhat while parolees covered by § 3056 were incarcerated, both the instigation of parole revocation and the service of any jail time for revocations enforced state-imposed requirements and served essentially state purposes.  Therefore, the state was not absolved by § 3056 of all its responsibility for Americans with Disabilities Act obligations as to parolees placed in county jails to enforce their state-imposed sentences, including their parole conditions.  The panel concluded that the district court's August 28 orders requiring implementation of the County Jail Plan neither conflicted with § 3056 nor required more of defendants than was appropriate to assist in remedying the Americans with Disabilities Act and Rehabilitation Act violations for which they bore responsibility.

The panel dismissed as moot the appeal from the district court's April orders which required renewed negotiations and the eventual dissemination to the counties of a compliance plan providing for, among other things, the tracking and monitoring of class members housed in county jails.

**COUNSEL**

Kamala D. Harris, Attorney General of the State of California; Jonathan L. Wolff, Senior Assistant Attorney General; Jay C. Russell, Supervising Deputy Attorney General; Giam M. Nguyen, Janelle M. Smith, and Jay M. Goldman (argued), Deputies Attorney General, San Francisco, California, for Defendants-Appellants.

Michael W. Bien, Gay C. Grunfeld (argued), Lisa Ells, Blake Thompson, and Michael Freedman, Rosen Bien Galvan & Grunfeld LLP, San Francisco, California; Warren E. George, Bingham McCutchen LLP, San Francisco, California; Donald Specter and Rebekah Evenson, Prison Law Office, Berkeley, California; and Linda Kilb, Disability Rights Education & Defense Fund, Inc., Berkeley, California, for Plaintiffs-Appellees.

**OPINION**

REINHARDT, Circuit Judge:

Since 1994, disabled state prisoners and parolees have been engaged in a seemingly never-ending struggle with California state officials over whether defendants must provide disability accommodations under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. These accommodations include basic necessities of life for disabled prisoners and parolees, such as wheelchairs, sign language interpreters, accessible beds and toilets, and tapping canes for the blind. Notwithstanding a series of careful district court orders dating back to 1996 and an opinion by this Court affirming the issuance of a permanent injunction, defendants

have resisted complying with their federal obligations at every turn.  These appeals provide no exception.  Defendants contend that a narrow portion of the class of disabled state prisoners and parolees is no longer eligible to benefit from the district court's remedial orders due to a change in California Penal Code § 3056.  We reject that contention and affirm the district court's latest enforcement orders.

## BACKGROUND

Our most recent opinion in this case summarized its long history.  *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063–64 (9th Cir. 2010).  In that opinion, we affirmed the validity of an ADA regulation[1] and concluded that defendants "cannot shirk their obligations to plaintiffs under federal law by housing them in facilities operated by the third-party counties."  *Id.* at 1074.  We made clear that "defendants have the responsibility of ensuring that their prisoners are afforded their rights under the ADA, regardless of where the State incarcerates them."  *Id.* at 1072.

Since our 2010 decision, plaintiffs have renewed their motion in the district court to enforce the injunction against defendants as it pertains to class members housed in county jails, and California has begun implementation of "realignment," a plan designed to ameliorate overcrowding in its prisons.

As a part of realignment, amendments to § 3056 became effective on October 1, 2011.  Defendants then asserted in the district court that they had been absolved by these amendments of all responsibility for violations of class

---

[1] 28 C.F.R. § 35.130(b)(1).

members' rights while they are housed by state law in county jails.[2]  The district court rejected this contention in January 2012 and then again in April 2012.[3]  It also issued orders ("the April orders") requiring the renewal of negotiations and the eventual dissemination to the counties of a compliance plan providing for, among other things, the tracking and monitoring of *Armstrong* class members housed in county jails.  Defendants appealed these orders.  The parties then negotiated a revised County Jail Plan ("the Plan").

---

[2] Prior to October 1, 2011, § 3056 provided "[prisoners] on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure of the prison."  Cal. Penal Code § 3056 (West 2010).  The realignment amendments provided:

> "Prisoners on parole shall remain under the supervision of the department but shall not be returned to prison except as provided in subdivision (b) or as provided by subdivisions (c) or Section 3000.09.  Except as provided by subdivision (c) of Section 3000.09, upon revocation of parole, a parolee may be housed in a county jail for a maximum of 180 days.  When housed in county facilities, parolees shall be under the legal custody and jurisdiction of local county facilities.  When released from custody parolees shall be returned to the parole supervision of the department for the duration of parole."

Cal. Penal Code § 3056(a) (West 2011).  The current version of § 3056(a), as amended June 27, 2012, is reproduced in footnote 5.

[3] Under realignment, low-level, non-serious, non-violent offenders are not placed on state parole after their release from prison.  § 3451.  Instead, the counties assume supervision responsibility for these parolees, termed Post-Release Community Supervision parolees.  In its January 2012 order, the district court makes clear that its order does not extend to Post-Release Community Supervision parolees, as the plaintiffs opted to not include community supervision parolees in their renewed motion.

On June 27, 2012, additional amendments to § 3056 went into effect, modifying the statute to provide, *inter alia*, that certain parolees awaiting a revocation hearing or serving a revocation term "shall be under the sole legal custody and jurisdiction of local county facilities"[4] while housed in county jails.[5] After the governor signed the new version of § 3056

---

[4] It is unlikely that the California legislature intended to place persons under the legal custody of "facilities," but we will construe the statute in accordance with its apparent intent.

[5] The current version of the statute (with amendments in italics) provides:

> (a)    Prisoners on parole shall remain under the supervision of the department but shall not be returned to prison except as provided in subdivision (b) or as provided by subdivision (c) of Section 3000.09. *A parolee awaiting a parole revocation hearing may be housed in a county jail while awaiting revocation proceedings. If a parolee is housed in a county jail, he or she shall be housed in the county in which he or she was arrested or the county in which a petition to revoke parole has been filed or, if there is no county jail in that county, in the housing facility with which that county has contracted to house jail inmates. Additionally, except* as provided by subdivision (c) of Section 3000.09, upon revocation of parole, a parolee may be housed in a county jail for a maximum of 180 days *per revocation*. When housed in county facilities, parolees shall be under the *sole* legal custody and jurisdiction of local county facilities. *A parolee shall remain under the sole legal custody and jurisdiction of the local county or local correctional administrator, even if placed in an alternative custody program in lieu of incarceration, including, but not limited to, work furlough and electronic home detention. When a parolee is under the legal custody and jurisdiction of a county facility awaiting parole revocation proceedings or upon*

into law, defendants refused to disseminate or implement the Plan. They adhered to this view despite the district court's denial of a stay pending appeal, our denial of defendants' request for a stay pending appeal, and our subsequent denial of defendants' motion for reconsideration of that denial.

In response to defendants' refusal to cooperate and implement the Plan, the *Armstrong* class filed an emergency motion to enforce the district court's order. The district court exercised its power to "preserve the status quo" pending the decision of the appellate court under Federal Rule of Civil Procedure 62(c) and granted plaintiffs' motion on August 28, 2012 ("the August 28 orders"). The August 28 orders essentially required defendants to disseminate and implement the Plan. Nonetheless, defendants appealed the August 28 orders, reiterating their arguments that § 3056, as amended, absolves them of any responsibility for *Armstrong* class members during the time in which they are housed in county jails and challenging for other reasons the district court's jurisdiction to issue those orders.[6]

---

*revocation, he or she shall not be under the parole supervision or jurisdiction of the department.* When released from *the county facility or county alternative custody program following a period of custody for revocation of parole or because no violation of parole is found, the parolee* shall be returned to the parole supervision of the department for the duration of parole.

[6] We reject defendants' argument that the district court lacked subject matter jurisdiction to issue the August 28 orders. Although an appeal ordinarily divests the district court of jurisdiction over the matters on appeal, Rule 62(c) creates an exception by providing that, "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure

Defendants argue that realignment divested them of authority over a subpart of the *Armstrong* class—those disabled parolees housed in county jails pursuant to § 3056—during the fairly brief and intermittent periods in which those class members are either awaiting a parole revocation hearing or detained due to revocation of parole. They also assert that any court-imposed duty with respect to those disabled parolees would interfere with California's prerogative to structure its internal affairs. They contend that, as a result of the changes in state law, the court may no longer

the opposing party's rights." That exception applies here. The district court acted to preserve the status quo and protect plaintiffs' rights in direct response to defendants' repeated and willful non-compliance with its earlier orders. Such action was particularly appropriate in this case, which involves a series of enforcement orders dating back over a decade and a continuous course of conduct marked by the development of new facts. *See Hoffman for & on Behalf of NLRB v. Beer Drivers & Salesmen's Local Union No. 888, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 536 F.2d 1268, 1276 (9th Cir. 1976) ("[I]n the kinds of cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken."). Defendants' arguments that the August 28 orders nonetheless violated Rule 62(c) by materially altering the status of the case on appeal, *see Natural Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001), do not succeed. The August 28 orders reduce rather than increase any imposition on defendants. The three "substantive changes" that defendants identify were anticipated by the injunction issued in January and as amended in April and are only slight modifications of those orders, calibrated to changes in the relevant facts. Most important, the status of this case on appeal remains unaltered by the August 28 orders because the question before us remains unchanged—whether the amendments to § 3056 wholly absolve defendants of responsibility for the *Armstrong* class members housed in county jails pursuant to that section.

order them to assist the counties with regard to the implementation of remedial actions, whether or not the state has in its possession information essential to the taking of such action. Thus, while defendants have not challenged the fact that the housing of parolees in county jails has led to widespread violations of *Armstrong* class members' rights under federal civil rights laws, they insist that they may no longer be ordered to take any action whatsoever that may serve to avert or alleviate such violations with respect to parolees housed in county jail pursuant to § 3056.

We consolidate defendants' appeals of the April and August 28 orders for purposes of disposition because both raise the same challenge to the scope of the injunction in light of the amendments to § 3056.[7]

## DISCUSSION

## I.

Plaintiffs have extensively documented the ADA and Rehabilitation Act violations suffered while serving parole revocation terms or awaiting revocation hearings in county jails. These violations are systemwide and extensive. They involve the widespread denial of mobility-assistance devices to persons unable to physically function without them, the denial of hearing devices to deaf class members, and the

---

[7] Because § 3056 was amended while this appeal was pending, the district court did not rule on the most recent amendments to § 3056. Ordinarily, we do not give consideration to issues not decided below. *Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir. 1986). Here, however, one of the exceptions to our ordinary rule is met—the issue on appeal "is purely one of law and the necessary facts are fully developed." *Id.* We therefore address it at this juncture.

denial of accessibility devices, such as tapping canes, to blind class members. These denials forced disabled class members into the vulnerable position of being dependent on other inmates to enable them to obtain basic services, such as meals, mail, showers, and toilets.

For their part in these violations, defendants failed to ensure that the counties knew of *Armstrong* class members' disabilities and failed to assist the counties with the development of appropriate disability-related policies. The vast majority of these undisputed violations could have been prevented if defendants had shared their knowledge with the county jails as to the accommodations needed by individual *Armstrong* class members. Those that could not have been prevented might have been cured if the class members had been afforded a grievance procedure through which they could have made defendants and the counties aware of their needs and their right to an accommodation.

The amendments to § 3056 do not relieve defendants of all responsibility for the discrimination suffered by *Armstrong* class members housed in county jails, past and present, or of their obligation to assist in preventing further violations.

Defendants were and remain an important player in the placement of disabled parolees in county jails without regard to the ADA compliance of those facilities. California's realignment of authority over certain parolees, including those who are disabled, to its counties has not changed this critical fact. Parole conditions are set by the state, § 3053, and violations of parole conditions are grounds for revocation. § 3000.08(f). The revocation process thus functions to enforce the state imposed parole conditions.

Although courts, rather than defendants, now conduct parole revocation hearings, it is still defendants who initiate the process of parole revocation. § 1203.2; § 3000.08(f). Defendants can also impose "flash incarceration" in county jails of one to ten days without judicial involvement. § 3000.08(e). In certain cases, after a revocation hearing before the state court, defendants, rather than the court, determine the appropriate period of incarceration. §§ 3000(b)(4), 3000.1, 3000.08(h). When state parolees are released from county jails at the end of their revocation term or after a finding that they did not violate their parole conditions, they are "returned to the parole supervision of [the state] for the duration of parole." § 3056. As a result, although § 3056 alters the balance of control between the state and its counties somewhat while parolees covered by § 3056 are incarcerated, both the instigation of parole revocation and the service of any jail time for revocations enforce state-imposed requirements and serve essentially state purposes. Therefore, the state is not absolved by § 3056 of all its responsibility for ADA obligations as to parolees placed in county jails to enforce their state-imposed sentences, including their parole conditions. *See Castle v. Eurofresh, Inc.*, No. 11-17947, slip op. at 18–19 (9th Cir. Sept. 24, 2013); *Armstrong*, 622 F.3d at 1063.

Just three years ago, addressing an earlier version of § 3056, we held that "defendants are responsible for providing reasonable accommodations to the disabled prisoners and parolees that they house in county jails." *Armstrong*, 622 F.3d at 1063. In the April order, the district court found that defendants remained responsible for continued violations in county jails because, *inter alia*, of their "ongoing failure to train, supervise, and monitor" their employees and their "ongoing failure to communicate with

county jails regarding the known needs of class members." These actions and culpable failures to act have played a significant role in *causing* the undoubted discrimination against *Armstrong* class members in county jails. The district court's findings directly implicate defendants in the violations of the ADA and the Rehabilitation Act, and they cannot escape responsibility for their conduct by means of the amendments to § 3056.[8]

The defendants are, by now, well aware of the history of ADA violations and degradations visited on parolees in county jails. In a different context, this court has held that a state may be liable to a child in the foster-care system, even after the child is adopted and "[i]t becomes the adoptive parent's responsibility to provide for the [child's] well-being," if the state "affirmatively create[s] a danger that the adopted child would not have otherwise faced," and the state was aware of the danger it created. *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 843–44 (9th Cir. 2010). Here too, the state cannot house persons for whom it is responsible in jails where the state reasonably expects indignities and violations of federal law will continue to occur, turn care over

---

[8] Defendants' reliance on the Fourth Circuit's decision in *Bacon v. City of Richmond*, 475 F.3d 633 (4th Cir. 2007), is misplaced. In *Bacon*, the district court ordered the city to pay to fix accessibility barriers in public schools despite its never having found that the city had in fact "discriminated against [the plaintiffs]," nor having found that the city bore any of the fault at all. *Id.* at 636, 639. Accordingly, the Fourth Circuit held that the city could not be held financially responsible for the ADA violations. *Id.* at 637, 639. In stark contrast, here, defendants are responsible for the parolees' incarceration. And the remedial order does not require the state to fund ADA accommodations generally, but only to facilitate the counties' provision of disability accommodations through services consistent with the state's role in placing parolees in county jails as part of a state-imposed sentence.

to county custodians, and then disown all responsibility for their welfare.

We must therefore reject defendants' categorical assertion that, under the amendments to § 3056, they may no longer be required to assist in any way with the counties' remedial actions—actions intended to facilitate the accommodation of plaintiffs' disabilities while they are temporarily detained in county jails. The amendments to § 3056 alter the balance of control between the state and its counties, but do not relieve defendants of all responsibility for the discrimination *Armstrong* class members suffer. We affirm the district court's conclusion that defendants have a continuing obligation to assist in alleviating the conditions that result in ADA and Rehabilitation Act violations in county jails.

## II.

The August 28 orders, which we review here, are consistent with federal law and do not infringe on California's prerogative to structure its internal affairs.[9]

The August 28 orders require principally that defendants: disseminate a copy of the Plan to their personnel and county officials; track disabled parolees by means of the existing tracking system; within 24 hours after a disabled parolee is detained in jail, e-mail information about that individual's disability and accommodation needs to the appropriate jail officer; provide stamped envelopes and grievance forms to all parolees and out-to-court prisoners with disabilities housed in county jails, while also encouraging parolees to use county

---

[9] On this appeal, we review only the August 28 orders because they supersede the April orders, which are now moot.

grievance procedures; notify a county designee when CDCR personnel become aware that a class member faces an emergency situation in county jail; review all grievances received from class members in county jails for patterns of non-compliance; and notify county officers of any patterns of denials of disability accommodations by written report, following up where appropriate with another written report on what steps might be taken to remedy the situation.

These minimal measures, consisting largely of notifications, collection of data, and reports to county officials, respect California's division of authority. The orders do not require that defendants compel the counties to do anything; nor do the orders require any kind of punitive or coercive action on the part of defendants if county officials fail to comply with their state and federal duties.

Further, as a practical matter, the August 28 orders impose only a minor and suitable burden on defendants. Defendants are already heavily involved in the administration of parole at the county and state levels. They concede, for example, that they have responsibility for certain parolees housed in county jails—life-term parolees and out-to-court inmates. Defendants have never challenged the requirements that they act to ensure that these parolees do not suffer discrimination on account of their disabilities while housed in county jails. It is not a significant burden for defendants to apply the same tracking and grievance procedures to parolees housed in county jails pursuant to § 3056. Moreover, defendants' agents and employees are working with and inside the county facilities on a daily basis to ensure compliance with state and federal law. By state law, defendants must inform parolees of their rights, and therefore, conduct in-person "notice of rights" interviews with each

parolee who is placed in county jail on a parole hold. § 1203.2(b)(1) & (2). Thus, it is only a minimal additional burden to determine whether each parolee is disabled and, if so, to give him a grievance form.[10]

Accordingly, the August 28 orders are carefully tailored to reflect the state's division of internal authority. They do not require defendants to interfere with the counties' authority over parolees housed in county facilities pursuant to § 3056.[11] Defendants remain responsible for taking certain measures to ameliorate or avoid the admitted and ongoing violations of plaintiffs' rights under the ADA and Rehabilitation Act, and those measures are fully consistent with the counties' exercise of their legal custody and jurisdiction over the parolees.

### III

We conclude that the August 28 orders neither conflict with § 3056 nor require more of defendants than is appropriate to assist in remedying the ADA and Rehabilitation Act violations for which they bear

---

[10] In the district court, defendants speculated that after local courts assume responsibility for parole revocation hearings in July 2013, state officers may no longer be participating in these in-person, notice-of-rights meetings. Defendants do not press this point on appeal, as they instead argue that the changes to § 3065 absolve the state of responsibility for parolees (other than those with life sentences) while they are in county facilities, period. Recent filings in the district court show that although defendants' agents are not currently serving petitions to revoke parole, they do serve probable cause determination forms.

[11] As the district court explained in the August 28 orders, the plaintiffs sought only to enforce the provisions contained in the County Jail Plan, not the enforcement required by the April order.

responsibility.  We therefore **AFFIRM** the remedial August 28 orders issued by the district court.

In No. 12-16018, the appeal is **DISMISSED** as moot.

In No. 12-17198, the orders of the district court are **AFFIRMED**.

In both appeals, Plaintiffs-Appellees shall recover their costs on appeal from Defendants-Appellants.