[S. F. No. 18091.   In Bank.   Oct. 24, 1950.]

COLUMBIA OUTFITTING COMPANY (a Corporation), Respondent, v. B. H. FREEMAN, Appellant.

Alden Ames, Sanborn H. Smith and Abraham Glicksberg for Appellant.

Oscar Samuels, Tevis Jacobs and Robert Sills for Respondent.

SCHAUER, J.—Defendant Freeman appeals from a judgment against him on his cross-complaint for money allegedly due under a written contract, in letter form, with plaintiff Columbia, a retail store. The trial court determined that the employe of Columbia who signed the contract "did not have authority, express, implied or ostensible, to sign on behalf of Columbia . . . and there was no ratification by Columbia of said letter." It is Freeman's position that the evidence, as a matter of law, shows that the employe had actual authority, either express or implied, or at least ostensible authority, and that Columbia ratified the contract. We have concluded that this position is not tenable.

Prior to May, 1946, Freeman acted as a collection agent for Columbia pursuant to an oral arrangement originally made by Freeman in 1938 with the then credit manager of Columbia and thereafter confirmed by each successive credit manager. During this period Freeman was but one of several agents who collected delinquent accounts for Columbia. The collection agents advanced costs and, after collection, paid Columbia 50 per cent of the amount of principal collected and kept the balance as compensation; Columbia, at any time before collection, could recall accounts from the collection agents without paying anything for the work and money which the agents might have expended in attempting to collect the accounts.

In March, 1946, Columbia, by its general manager Portner, employed a new credit manager, Flottemesch. Flottemesch obtained Portner's express authorization to recall all accounts from the various collection agents and to arrange for Freeman to act as Columbia's sole collection agent. The form of letter by which Flottemesch demanded that the agents return their accounts was drafted by Freeman. Freeman told Flottemesch that he did not wish to undertake all Columbia's collection work except by written agreement; that he feared that after he had expended much time and money on accounts Columbia would recall them. Therefore, Flottemesch agreed that Freeman could have the protection of a written contract. This contract, in the form of a letter from Flottemesch to Freeman, dated May 9, 1946, was prepared by the latter with advice of counsel. It is on Columbia stationery which Flottemesch gave Freeman at the latter's request. It provides that Freeman has "the exclusive right to work said accounts and to enforce the payment of same by suit or otherwise"; that he will advance collection costs and retain all amounts collected, except 50 per cent of principal which is to be paid to Columbia; that Columbia has "the right at any time to recall, in writing, any or all of the said accounts . . . assigned to you . . . and in that event you are to receive from us all costs which you may have advanced in working said recalled account or accounts, and also your full commission on the principal sum due on said recalled account or accounts." Freeman did not specifically discuss the effect of the last quoted provision of the contract with Flottemesch; Flottemesch signed the contract without advising Portner or any other officer of Columbia that he was doing so; and Portner and the other officers of Columbia did not learn of the existence of the contract until after Flottemesch left Columbia's employ in May, 1947.

Freeman did much work "processing" and collecting Columbia accounts. Portner became dissatisfied with the aggressive methods used by Freeman in collecting and wrote to Freeman on March 18, 1947, that "I believe it would be best if we came to a definite conclusion regarding the matter of our accounts, which you are handling"; that an action which Freeman had instituted in connection with his collecting activities was contrary to the store's policy and should be dismissed at once; and that "You are to continue the collection of those accounts you have begun . . . You return to us the balance of those accounts which you have in your possession." Freeman asked for a clarification as to what accounts he was being asked to return. Portner refused further explanation. Freeman then discussed the matter with Flottemesch and the latter, without authorization or knowledge of Portner, on March 24, 1947, wrote to Freeman: "you are to keep all accounts that suit has been filed upon and return all others." This Freeman did. He also wrote to Portner, "I do not find in any of the provisions of our agreement any reference to . . . your controlling my lawful procedure in enforcing payment from the debtors, save . . . your right to recall the account or accounts and in which event I would be entitled to full payment." On receiving this letter, Portner asked Freeman to what agreement he referred. Freeman refused to explain and said, "you will find out . . . my statement [of accounts returned, etc.] . . . will speak for itself." Portner first learned of the letter agreement in May, 1947, when he found it in Flottemesch's desk after the latter's employment by Columbia had been terminated. Columbia refused to recognize the contract, but it did offer to return to Freeman all recalled accounts which had been in the process of collection. Freeman refused to accept these accounts. Columbia then brought this action against Freeman for one-half the amounts of principal which he had collected and not remitted to Columbia; Freeman cross-complained for $69,212.28, one-half the principal amount of the recalled accounts, and $549.34 which he had expended in attempting to collect those accounts.

Section 2316 of the Civil Code provides that "Actual authority is such as a principal intentionally confers upon the agent [i. e., express authority], or intentionally, or by want of ordinary care, allows the agent to believe himself to possess [i.e., implied authority]." (See, also, Restatement, Agency, §§ 7, 26.) The evidence does not suggest that Columbia intentionally or expressly conferred on Flottemesch the authority

to enter into an agreement that Freeman should receive "full commission on the principal sum due on said recalled account or accounts"; all the evidence is to the contrary. �as There could be no implied authority unless Flottemesch, the agent, believed that he had such authority. The following circumstances tend to show that Flottemesch did not believe that he had authority to bind Columbia by the disputed term of the contract: The fact that he had no office of his own, but only a desk in the general office, where three or four secretaries and the cashier also had offices, should have indicated to him that Columbia did not consider him as a high-ranking, policy-making agent. The fact that he asked for and obtained express authorization of Portner when he wished to recall all the accounts, and when he wished to turn them all over to Freeman, tends to show that he did not believe that he was authorized to change fundamental arrangements as to the collection of delinquent accounts on his own initiative. The following behavior of Flottemesch was not in accord with his duty of loyalty to Columbia and set up the circumstances which eventually resulted in Freeman's being able to press, with some color of right, his present large claim: Flottemesch at no time disclosed the existence or terms of the letter agreement to any officer of Columbia; he kept the letter, not in the files, but in his desk; even when he knew that Portner was recalling accounts en masse, with obvious lack of knowledge that such action might subject Columbia to large liability if the letter agreement were enforceable, Flottemesch said nothing to Portner concerning the agreement and instead, without authorization, acted against Columbia's interest by directing Freeman to return *all* accounts, except those on which suit had been filed, whereas Portner had intended to recall only those accounts which Freeman had taken no steps to collect. The trier of fact was entitled to, and we assume that it did, interpret Flottemesch's peculiar behavior in failing to disclose to Columbia what he had done, as arising out of his knowledge that he had exceeded his authority in purporting to bind Columbia by the letter agreement.

▮ The finding that there was no ostensible authority is supported by circumstances showing Freeman's want of belief in Flottemesch's authority. "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317; see, also, Restatement, Agency, §§ 8, 27.) "A

principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof.'' (.Civ. Code, § 2334.) The trial court was justified in finding that Freeman did not believe, or at least was careless in believing, that Flottemesch had authority to bind Columbia to an obligation entirely different from that which it had previously had to Freeman. Freeman knew that Flottemesch was not considered to have a position which would entitle him to an office of his own. The trial court could consider the significance of Freeman's conduct in March, 1947, during his dispute with Portner, in refusing to disclose to Portner the terms of the agreement, of which Portner was obviously ignorant, and in insisting upon a written specification by Flottemesch of the accounts to be returned, although Freeman knew that Portner refused to authorize such specification; that conduct can be explained as arising from at least a doubt as to whether the agreement for commission on recalled accounts was authorized. The trier of fact was entitled, further, to determine that Freeman had been similarly at least doubtful as to Flottemesch's authority in May, 1946, when Flottemesch signed the agreement which Freeman, with the advice of his attorney, had prepared.

The acts of Columbia relied on by Freeman to show ostensible authority—giving Flottemesch the title ''credit manager'' and allowing him to arrange for Freeman to act as Columbia's sole collection agent—could not, of course, have that effect if Freeman did not reasonably ''believe the agent to possess'' power to bind Columbia by the agreement to pay ''full commission'' on recalled accounts, so different from the arrangement which Columbia had previously had with Freeman.

Freeman relies on section 2319 of the Civil Code, which provides that an agent has authority ''[t]o do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency.'' (See, also, Restatement, Agency, §§ 35, 50, 51.) He argues that an expressly authorized purpose of Flottemesch's agency was to arrange for Freeman to handle all Columbia's accounts, and that Flottemesch could do this only by making the letter agreement. But, assuming such agreement was ''necessary'' to induce Freeman to handle all Columbia's accounts, the trier of fact could determine that it was not ''usual''; Columbia had never before made such an agreement with any collection

agent, and Freeman had never before made such an agreement with any client.

In support of his contention that the evidence, as a matter of law, compels the conclusion that Columbia ratified the letter agreement, Freeman points out that he continued to collect those accounts which were not recalled, that Columbia did not object to his doing so, but rather brought this action to recover monies collected by him for it, and that at the trial Portner testified that he was still willing to have Freeman collect the accounts retained by him. This, according to Freeman, shows acceptance of benefits under, and therefore ratification of, the letter agreement. The flaw in this argument is that Columbia does not claim, and has never suggested that it is entitled to, any benefit under the letter agreement. It has refused to recognize such agreement ever since it learned of its existence. To be sure, it has sued for a share of monies collected by Freeman, but the action is not on the agreement but on a common count, for a recovery measured by the same reasonable standard of recovery laid down in the oral agreement with Freeman made in 1938, which standard had been mutually accepted for some eight years and which Columbia, until May, 1947, believed was still in effect.

Inasmuch as the judgment against Freeman must be upheld on the theory that Columbia is not bound by the letter agreement, it is not necessary to discuss Freeman's contentions that other theories expressed in the trial court's findings and conclusions are erroneous.

For the reasons above stated the judgment appealed from is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied November 20, 1950.