**PENTHOUSE INTERNATIONAL, LTD.,
a New York Corporation,
Plaintiff/Appellant,**

**v.**

**Priscilla BARNES, Defendant/Appellee.**

No. 85–6023.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1986.

Decided June 24, 1986.

As Amended on Denial of Rehearing
July 30, 1986.

Norman Roy Grutman, Grutman, Miller, Greenspoon, Hendler & Levin, New York City, for plaintiff/appellant.

David Elson, Manatt, Phelps, Rothenberg & Tunney, Los Angeles, Cal., for defendant/appellee.

Before SCHROEDER, BOOCHEVER and HALL, Circuit Judges.

BOOCHEVER, Circuit Judge:

Penthouse International, Ltd. (Penthouse) filed for a declaratory judgment of the terms of a 1975 model release with Priscilla Barnes (Barnes). Barnes counterclaimed for damages and injunctive relief, alleging breach of confidentiality. The district court bifurcated the trial, and this appeal is from the declaratory judgment only.

Pursuant to the contract Penthouse published nude photographs of Barnes under a fictitious name in its March 1976 issue. Penthouse now proposes pursuant to the same contract to republish the photographs using her true identity. The district court, however, found that the contract did not convey to Penthouse the right to identify Barnes with the photographs, declared the contract terminated, and ordered Penthouse to return the transparencies to Barnes and to refrain from publishing the photographs entirely. Penthouse appeals.

At issue are (1) whether photographer Jeff Dunas (Dunas) acted within his actual authority in modifying Penthouse's printed form contract by adding the term AKA, (2) whether the district court erred in interpreting the AKA term to mean that Penthouse could not publish the photographs under Barnes' name, and (3) whether the district court abused its discretion by fashioning a remedy that ordered Penthouse to refrain from publishing entirely and to return the transparencies to Barnes. Although the district court made findings on ostensible authority, ratification, adhesion, breach of contract, and fraud, we find it unnecessary to review those issues because of our disposition based on actual agency and implied actual authority. We affirm the declaratory judgment interpreting the contract and finding actual agency, but reverse, in part, the grant of relief.

## FACTS

While acting as a hostess at a Hollywood club, Barnes was approached by Dunas, who identified himself as a freelance photographer who sold photographs to Penthouse. Dunas asked Barnes to pose nude, having in mind "the possibility of selling" photographs of her to Penthouse. Dunas suggested that Barnes examine the current issue of Penthouse to review the quality of his work. Although Dunas was paid as an independent contractor and did not have an office at Penthouse, Penthouse provided Dunas with the title of "Penthouse Staff Photographer" and included his name on its masthead. Dunas explained that if Barnes desired, her photographs would be accompanied by a pseudonym.

Before the photo session began Dunas presented Penthouse's standard model "Release, Authorization and Agreement" (the contract), filled in the blanks with the appropriate names and compensation figures, and asked Barnes to read and sign it. The release states in part:

> I, Priscilla Barnes, hereby give Penthouse, its legal representatives and assigns, and those acting with its permission, or its employees, the consent, right and permission to buy, and/or purchase, and/or own, and/or assign, and/or transfer, and/or sell, and/or copyright and/or license to use, reuse and/or publish, and republish photographic pictures or portraits of me, or in which I may be distorted in character, or form, in conjunction with my own or a fictitious name....

Barnes read and signed the contract. Sometime immediately before or after her signing Dunas added the handwritten term "AKA" below the date. Barnes testified that Dunas told her that this notation meant that Penthouse would not publish her name, but would instead use a pseudonym.

According to Barnes, anonymity was an important consideration because of the nature of the photographs. Barnes, however, did not cross out in the provision for publication "in connection with my own ... name" nor did she add that only a fictitious name could be used. She testified that she read and understood the contract but did not know that she could alter the contract.

Robert C. Guccione (Guccione), Penthouse editor and publisher, testified, as did Barnes, that "AKA" meant "also known as." Guccione explained that such a notation was sometimes used to communicate a model's preference that her real name not be used. Unless a model crossed out the words "my own or" from the contract's provision allowing use of "my own or a fictitious name," or otherwise clearly indicated that the nonuse of her name was a condition of her agreement, he did not treat the mere notation "AKA" as affecting Penthouse's option under the contract to use either the model's real or a fictitious name. The district court found, however, that the photographers and other staff members customarily did not publish or republish photographs under a model's real name if AKA was added to the contract, regardless of whether the term "in my own name" was not stricken. The record supports that finding.

After a rumor was published in the *National Enquirer* and *People Magazine* that Barnes was Penthouse's 1976 centerfold, Guccione decided in the fall of 1983 to republish Barnes' photographs using her name. Before doing so Penthouse submitted the contract to the district court for a declaratory judgment that, pursuant to the contract, it had the right to republish the photographs with Barnes' name. In her answer and counterclaims, Barnes alleged that the contract not only prohibited Penthouse from publishing her name but also imposed upon Penthouse an affirmative duty never to associate her name with the photographs published in 1976. Barnes sought compensatory and punitive damages as well as injunctive relief premised on the allegation that Penthouse had breached its duty of confidentiality by its actions in 1983 and 1984, including failing to file suit under seal. In response to Barnes' request for a temporary restraining order, Penthouse agreed during the pendency of the suit not to publish the

"photographs until a judicial determination that we have a right to do so has been obtained."

## I. ANALYSIS

### A. ACTUAL AGENCY

■ Under California law, questions regarding the existence of agency are questions of fact that we review for clear error. *In re Nelson*, 761 F.2d 1320, 1322 (9th Cir.1985).

■ The California Civil Code defines actual authority as "such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." Cal.Civ.Code § 2316 (West 1985). The parties dispute whether Dunas was solely an independent contractor or whether his acts could be construed as the acts of an agent. The Restatement (Second) of Agency § 14N (1958), provides that "[o]ne who contracts to act on behalf of another and subject to the others' control except with respect to his physical conduct is an agent and also an independent contractor." See *City of Los Angeles v. Meyers Brothers Parking System, Inc.*, 54 Cal.App.3d 135, 138, 126 Cal.Rptr. 545, 546 (1975). At issue is whether Dunas contracted to act on behalf of Penthouse.

> The district court explained that
> [t]he acts performed by Dunas may be distinguished by the separate roles that he performed as a free-lance photographer and as an authorized Penthouse agent. The latter role is similar to activities performed by a salesman, i.e., soliciting young women to pose for Penthouse and convincing them to sign a Penthouse release form.... Dunas was an agent for Penthouse for the purpose of securing model releases. He was also an independent contractor as a Penthouse photographer.

Guccione explained that Dunas "would find a girl who in his opinion was worth testing and possibly photographing for the magazine. He would then proceed to test the girl and send us one or two rolls of film showing the girl...." If Penthouse liked the test photographs, it would commission Dunas to do a full portfolio. With respect to the final portfolio Penthouse instructed photographers "to get a signed model release and not to alter the release in any way, without our permission."

In Barnes' case, however, it appears Dunas may not have used the normal procedure; instead of submitting test shots prior to a full portfolio, he photographed an entire portfolio for sale to Penthouse. Guccione explained that "if the photographer believes that he has a good girl he may well photograph and then attempt to sell her after he does the photographing. This may have been such an example." If so, under this arrangement Dunas conceivably might not be a Penthouse agent.

Guccione, however, also testified that "[a]ll photographers are permitted to charge up to a certain specified amount in actual out-of-pocket expenses during a photographic session. We don't expect them to take their expenses, which can be at some times considerable, out of the money that we pay them." Further, Penthouse carried Dunas' name on its masthead, gave him blank Penthouse contracts, may have given him business cards, and had him present contracts to models. Thus, although the record conflicts as to whether Dunas was an actual agent of Penthouse, on review, we cannot find that the district court clearly erred in finding Dunas to be a Penthouse agent.

■ Having found that the district court did not err in characterizing Dunas as an agent, we next turn to whether Dunas was acting within the scope of his authority by modifying the contract. Barnes does not contend nor is there evidence that Dunas possessed express actual authority to modify the contract. Dunas, however, had implied actual authority. Implied actual authority requires that (a) Dunas believe he was authorized to modify the contract based on Penthouse conduct known to him or (b) such a belief was reasonable. See *South Sacramento Drayage Co. v. Camp-*

*bell Soup Co.,* 220 Cal.App.2d 851, 856, 34 Cal.Rptr. 137, 139–40 (1963) (citing *Columbia Outfitting Co. v. Freeman,* 36 Cal.2d 216, 218, 223 P.2d 21, 23 (1950)).

Dunas was unavailable to testify as to his belief in his authority. Circumstantial evidence exists that he placed AKA on other contracts with no objection from Penthouse. In June 1974, a year and a half before Barnes posed, contracts prepared by Dunas had AKA on them. Further, Penthouse internal memoranda reflect an understanding among Penthouse employees that "AKA" added to a contract meant that Penthouse was to associate a fictitious name with a woman's photograph. The evidence thus indicates that Dunas reasonably believed he was authorized to add AKA and modify the contract to require that only a fictitious name be used.

We conclude that the district court did not clearly err in finding that Dunas was a Penthouse agent acting within implied actual authority when he modified the contract.

### B. CONTRACT INTERPRETATION

■ We review the district court's factual findings in the interpretation of a contract for clear error. The principles of contract interpretation, however, are legal issues that we review de novo. *Kemmis v. McGoldrick,* 767 F.2d 594, 597 (9th Cir. 1985); *Miller v. Safeco Title Insurance Co.,* 758 F.2d 364, 367 (9th Cir.1985).

Under California law, the handwritten term "AKA" controls over typewritten terms for purposes of interpreting the contract. Cal.Civ.Code § 1651 (West 1985). Further,

> [i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.

Cal.Civ.Code § 1649 (West 1985). Any uncertainty in a contract is to be construed most strongly against the party who caused the uncertainty. Cal.Civ.Code § 1654 (West 1985).

The district court thus held that [i]f the term "AKA" is construed according to the meaning that Barnes gave to it, the release is ambiguous because of the conflicting terms. To the degree that the Penthouse printed release form might allow Penthouse to use a model's real name, the handwritten addition of "AKA" controls the printed release form. Any language in the printed release form which may be inconsistent with the added term "AKA" must be disregarded.... Barnes understood the term "AKA" to mean that the photos would be published under a fictitious name only. The term was added for her benefit. The interpretation offered by Penthouse would result in a void modification and would deprive Barnes of a bargained for benefit. ... Barnes' understanding of "AKA" must control.

Penthouse contends the district court erred in finding that the contract is ambiguous. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ.Code § 1641 (West 1985). Penthouse thus asserts that the district court did not understand that the requirement that the court is to give more emphasis to the handwritten terms applies only where the court first determines that an irreconcilable conflict exists between the terms. See *Prudential Realty & Finance Co. v. Clarewood Co.,* 187 Cal.App.2d 320, 322, 9 Cal. Rptr. 402, 404 (1960).

Penthouse reasons that Barnes' construction of AKA nullifies the option of allowing republication "in connection with my own or a fictitious name" and thus violates the canon embodied in section 1641. Penthouse's construction, that AKA is simply a request to use a pseudonym, gives effect to both the "my own or" provision and to the AKA. Thus, following the canon embodied in Section 1641, Penthouse asserts that the district court could have given effect to both terms by interpreting the addition of AKA as a request that a pseudonym be used.

Penthouse further alleges that the district court erred in relying on California Civil Code § 1654 to interpret the contract most strongly against it. Section 1654's canon that a contract should be interpreted most strongly against the party who caused an uncertainty applies only in "cases of uncertainty not removed by the preceding rules." Cal.Civ.Code § 1654 (West 1985). A prior provision, section 1652, requires the court to harmonize terms if reasonably practical. Penthouse contends that if the district court had followed that mandate, any uncertainty in Barnes' contract is removed and section 1654 is rendered inapplicable.

Although California rules of contract interpretation require that the court first attempt to remove any uncertainty by interpreting the contract as a whole so as to give every term effect, once Dunas added AKA to the contract a question regarding the terms and the intent of the parties arose.

California permits extrinsic evidence to be used to determine if there is an ambiguity. *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 39–41, 69 Cal.Rptr. 561, 565–66, 442 P.2d 641, 645–46 (1968); *Blumenfeld v. R.H. Macy & Co.*, 92 Cal.App.3d 38, 44–45, 154 Cal.Rptr. 652, 655–56 (1979). Penthouse testified that it believed AKA is a request that a fictitious name be used whereas Barnes testified that she believed her anonymity was to be preserved.

■ Further, once the conflict arose, the district court was free to look outside the four corners of the contract to parol evidence in an effort to discern the meaning of the terms and the intent of the parties. *Jewel Companies, Inc. v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555, 1565 (9th Cir.1984); Cal.Civ.Pro. Code § 1856 (West 1983). Relying on parol evidence, the district court found that Barnes believed her anonymity was to be preserved and that Penthouse had a policy of assuring models that their photographs and stories would appear under fictitious names when AKA was added to the contract. The district court did not clearly err in making those findings. Under these circumstances it was proper to apply the rules that handwritten terms control over printed ones and in cases of uncertainty, contract language is interpreted most strongly against the party who caused the uncertainty. Reviewing de novo and balancing the sometimes conflicting principles of contract interpretation we conclude that there was no error in determining that the addition of AKA modified the contract to mean that only a fictitious name could be used.

## C. RELIEF

■ The district court found and ordered that:

2. The contract did not convey to Penthouse the right to attribute Barnes' true name and identity to the photos;

3. Penthouse having attributed Barnes' true name and identity to the photos by filing the Complaint in the public record, Penthouse's rights to republish or otherwise use the photos which were the subject of the contract, and such other rights as Penthouse might otherwise have been entitled to exercise under the contract, are hereby declared and ordered terminated;

4. Penthouse shall promptly deliver to Barnes the original transparencies, and any duplicate transparencies thereof, of all photographs which were taken pursuant to the contract; . . .

Penthouse alleges that in so ordering, the district court exceeded the scope of the first stage of the bifurcated trial. Whether declaratory relief should be exercised in a given instance "is subject to more searching review by an appellate court than the 'abuse of discretion' standard." *Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984) (quoting *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir.1981)). The district court's grant of specific declaratory relief is reviewed for abuse of discretion. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021–22 (9th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 802, 88

L.Ed.2d 778 (1986); *Bilbrey*, 738 F.2d at 1470.

In Barnes' case the declaratory judgment action and the counterclaims were bifurcated. The district court clarified that only Penthouse's declaratory judgment claim was to be adjudicated at the first trial and did not allow discovery of 1983 events. The only question before the district court was whether Penthouse, under its contract with Barnes, could republish Barnes' photographs using her real name.

■ Once the court determined Penthouse could not republish under Barnes' name, it was within the court's power to order Penthouse to act so as to preserve Barnes' rights. *Gallinot*, 657 F.2d at 1025 (having declared statutory scheme unconstitutional on its face, district court was empowered to grant further necessary or proper relief to effectuate judgment). The Declaratory Judgment Act provides the district court with the power to issue an appropriate order so as to effectuate a grant of declaratory relief. 28 U.S.C. § 2202 (1982) provides:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

Although the district court did not provide Penthouse with formal notice and hearing of a possible mandatory injunction against publication using Barnes' name, Penthouse was aware of the possibility and had an opportunity to be heard. Penthouse was on notice of Barnes' claims. Barnes' answer raised affirmative defenses which put Penthouse on notice of the issues. Further, the nature of the remedy Barnes sought was raised in her trial brief and was discussed during closing argument. It was again addressed in Barnes' post-trial memorandum. Thus, the district court did not

abuse its discretion in deciding to grant declaratory relief, nor did the district court err in interpreting the contract as not conveying to Penthouse the right to attribute the photographs to Barnes and in granting specific relief by ordering Penthouse not to republish the photographs with her name.

■ It is more problematic whether ordering Penthouse to return the transparencies and not to publish the photographs at all is proper. The district court appears to have based that portion of the order on a finding that Penthouse breached the contract by leaking to the public that Barnes was Penthouse's 1976 centerfold as well as by failing to bring the suit under seal.[1] Neither rationale is within the scope of this portion of the trial. Once the district court limited the trial to Penthouse's request for a declaratory judgment and limited discovery to events regarding the execution and interpretation of the contract, any findings regarding events in 1983 were outside the scope of the first stage of the trial.

Although the Declaratory Judgment Act allows the district court to fashion necessary or proper relief once it has determined the rights of the parties, the district court abused its discretion by considering events outside the scope of the first part of the bifurcated trial in ordering Penthouse not to publish the photographs at all and to return the transparencies to Barnes. While we affirm that portion of the district court's order which interprets the contract and orders Penthouse not to publish photographs of Barnes under her name, we vacate that portion which orders Penthouse not to publish the photographs at all and orders Penthouse to return the transparencies to Barnes. These remedies appear to be more properly considered in the second stage of the Barnes case. There is no danger of immediate harm by republication, because Penthouse has orally stipulated not to publish during the pendency of the lawsuit.

---

1. We note, however, that Barnes' motion to have the case put under seal was denied by a different district court judge. We further believe that if parties cannot reach an agreement on an issue such as the meaning of a contract, it is preferable to resolve the issue by declaratory judgment rather than by acting in a manner contrary to the eventual determination of the meaning of the contract.

## CONCLUSION

We affirm the district court's finding that Dunas was an actual agent acting within the scope of actual implied authority when he modified the contract. Further, we affirm the district court's contract interpretation that the addition of AKA precludes Penthouse from publishing the photographs under Barnes' name. Finally, we affirm that portion of the district court's order which directs Penthouse to refrain from publishing the photographs under Barnes' name, but not that portion which orders Penthouse to return the transparencies to Barnes and to refrain from publishing the photographs entirely. As to the other issues addressed by the district court, they are outside the scope of our review of this portion of the trial. Because issues of breach of contract were beyond the scope of the bifurcated portion of the case which was tried, we vacate those findings. The district court opinion is

AFFIRMED in part, REVERSED in part, and VACATED in part.