**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN ARMSTRONG; JAMES AMAURIC; RICHARD PONCIANO; JACK SWENSEN; BILLY BECK; JUDY FENDT; WALTER FRATUS; GREGORY SANDOVAL; DARLENE MADISON; PETER RICHARDSON; STEVEN HILL; DAVID ROSE; DAVID BLESSING; ELIO CASTRO; ELMER UMBENHOWER; RAYMOND HAYES; GENE HORROCKS; KIAH MINCEY; CLIFTON FEATHERS; WILLIE JOHNSON; DAVID BADILLO; JAMES SIMMONS; FLORA ABRAMS; JOEY GOUGH; TIMOTHY WHISMAN, *Plaintiffs-Appellees*, v. EDMUND G. BROWN, JR.; MICHAEL MINOR; MATTHEW L. CATE; DIANA TOCHE; CHRIS MEYER; KATHLEEN DICKINSON; MARGARITA PEREZ, *Defendants-Appellants*. | No. 12-17103  D.C. No. 4:94-cv-02307 CW  OPINION |

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, Chief District Judge, Presiding

Argued and Submitted
May 20, 2014—Pasadena, California

Filed September 26, 2014

Before: Stephen Reinhardt, A. Wallace Tashima,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Prisoner Civil Rights

The panel affirmed in part and vacated in part the district court's order modifying the accountability provisions of an earlier injunction ordering the State of California to take specified steps to ensure that disabled inmates were provided with needed accommodations.

The panel rejected the State's contention that the Modified Injunction was issued without notice and an opportunity for it to respond. The panel further held that the State waived its challenge to the statewide scope of the injunction and also waived its argument that the injunction conflicted with state law and the Collective Bargaining Agreement between the State and prison employees. The panel declined to exercise its discretion to consider these arguments.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the Modified Injunction complied with the Prison Litigation Reform Act. The panel held that the district court did not err in finding that a modification to the accountability system was necessary because the State had failed to fulfill the accountability requirements mandated by its previous injunction to track inmates' needs and ensure the receipt of needed accommodations. The panel determined that the Modified Injunction was narrowly tailored and no broader than necessary to address the federal violations.

The panel held that the district court exceeded its authority in appointing an expert to resolve disputes between plaintiffs and the State because this delegation of authority was beyond the scope of the duties that may be assigned to an expert appointed pursuant to Federal Rule of Evidence 706. The panel therefore vacated that portion of the Modified Injunction and remanded to the district court with instructions to revise the Modified Injunction in a manner consistent with the panel's opinion.

**COUNSEL**

Kamala D. Harris, Attorney General of California, Jonathan L. Wolff, Senior Assistant Attorney General, Jay C. Russell, Supervising Deputy Attorney General, Janelle M. Smith, Deputy Attorney General, Jay M. Goldman (argued), Supervising Deputy Attorney General, San Francisco, California, for Defendants-Appellants.

Donald Specter (argued), Warren George, Rebekah Evenson, and Penny Godbold, Prison Law Office, Berkeley, California; Michael W. Bien, Gay C. Grunfeld, Lisa Ells, Blake Thompson, and Michael Freedman, Rosen Bien Galvan &

Grunfeld LLP, San Francisco, California; and Linda Kilb, Disability Rights Education & Defense Fund, Inc., Berkeley, California, for Plaintiffs-Appellees.

## OPINION

TASHIMA, Circuit Judge:

For more than two decades, disabled prisoners have been mired in litigation aimed at bringing California's prison facilities into compliance with the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the U.S. Constitution. In this appeal, Defendants, officials responsible for the state's corrections system (collectively, the "State"), challenge a 2012 order in which the district court modified the accountability provisions of an earlier injunction ordering the State to take specified steps to ensure that disabled inmates were provided with needed accommodations. For the reasons discussed below, we affirm in part and vacate in part the district court's order.

I.

In 1994, Plaintiffs, a class of disabled state prisoners and parolees, filed an action against officials responsible for California's corrections system and parole proceedings, seeking disability accommodations required by the ADA and the RA.[1] After a series of orders in which the district court

---

[1] The litigation was bifurcated, with parolees and applicants for parole proceeding on a separate track from prisoners in general. *See Armstrong v. Davis*, 275 F.3d 849, 855 (9th Cir. 2001) ("*Armstrong I*"), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005).

and this court found the State to be in violation of these federal statutes, the State produced a remedial plan intended to ensure that disabled inmates had access to programs and facilities in California's prisons. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010) ("*Armstrong II*"). In March 2001, the district court entered a permanent injunction directing enforcement of the remedial plan (the "2001 Injunction"). *Id.*

By 2007, however, the State had failed to bring its correctional facilities into compliance with the remedial plan and the 2001 Injunction. *Armstrong v. Schwarzenegger*, No. 4:94-cv-2307 (N.D. Cal. Jan 18, 2007). Accordingly, the district court issued another injunction (the "2007 Injunction"), which provided, in relevant part:

> Within 120 days of the date of this Order, defendants . . . shall develop a system for holding wardens and prison medical administrators accountable for compliance with the Armstrong Remedial Plan and the orders of this Court. This system shall track the record of each institution and the conduct of individual staff members who are not complying with these requirements . . . .

*Id.*

In response to the 2007 Injunction, the State issued a memorandum outlining tracking, investigation, and reporting protocols designed to address the failings identified by the

---

This appeal concerns only those orders relating to accommodations for prisoners.

district court (the "2008 Memo"). The 2008 Memo provided that allegations or reports of staff misconduct would be investigated by a designated Hiring Authority, which would render a decision in the matter. The Hiring Authority's decision would then be recorded in non-compliance logs, which were to be provided to the district court and Plaintiffs' counsel.

In 2012, Plaintiffs, dissatisfied with the State's response to the 2007 Injunction, filed a request for an order to show cause why the State should not be held in contempt for failing to comply with the injunction's accountability requirements. In the motion, Plaintiffs submitted evidence that inmates were continuing to be denied access to needed accommodations and that the State had failed to investigate and record numerous alleged violations of the remedial plan. In opposition, the State argued that the 2007 Injunction required institutions to track only instances of actual employee non-compliance, as found by the Hiring Authority, and not unsubstantiated allegations. The State also argued that the 2007 Injunction did not require it to investigate or log allegations that did not identify a particular staff member responsible for the deprivation, that did not allege that the deprivation resulted from misconduct, or that were later remedied.

The district court disagreed with the State's interpretation of its investigation and logging obligations, but declined to hold the State in contempt. *Armstrong v. Brown*, No. 94-cv-2307 CW, 2012 WL 3638675, at *8 (N.D. Cal. Aug. 22, 2012). The district court concluded that "the 2007 injunction implicitly required Defendants to include in the accountability system requirements to investigate promptly and appropriately all allegations of violations, regardless of

the source, and to record the outcomes of the investigations, including whether or not the allegations were substantiated . . . ." *Id.* The district court further found that the State's reporting practices did not comply with these requirements. *Id.* However, "in an abundance of caution," the district court concluded that the 2007 Injunction might not have stated these requirements clearly enough and, instead of holding the State in contempt, issued an injunction clarifying the State's accountability obligations (the "Modified Injunction"). *Id.* The district court modified the injunction explicitly to mandate that the State investigate and "track *all allegations* of non-compliance with the [remedial plan] and the orders of this Court." *Id.* (emphasis added). The district court also added dispute-resolution procedures, including that Plaintiffs' counsel may review the investigations and that an expert witness would resolve disputes between Plaintiffs' counsel and the State over compliance. *Id.* at \*11–\*12.

The State appealed the Modified Injunction on several grounds. The State contends that the Modified Injunction is invalid because it was issued without notice and an opportunity for the State to be heard; that it violates the Prison Litigation Reform Act ("PLRA"); that the statewide scope of the injunction is unjustified by the evidence; that the district court exceeded its authority in appointing an expert to resolve disputes between Plaintiffs and the State; and that the Modified Injunction conflicts with various provisions of state law and with the Collective Bargaining Agreement ("CBA") between the State and prison employees.

II.

We review the district court's legal conclusions *de novo*, the factual findings underlying its decision for clear error, and

the injunction's scope for abuse of discretion. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 653 (9th Cir. 2002).

III.

The State contends that the Modified Injunction must be vacated because it was issued without adequate notice and opportunity to be heard. We disagree.

Before issuing injunctive relief, the court must provide the affected party with notice and an opportunity to be heard. *Penthouse Int'l, Ltd. v. Barnes*, 792 F.2d 943, 950 (9th Cir. 1986). The district court here did so. At a June 7, 2012, hearing on Plaintiffs' contempt motion, the district court provided the State with oral notice that it intended to modify the injunction. During that hearing, it identified its specific concerns with the State's accountability system and explained the particular changes it intended to make. This oral notice, which made the State aware of the changes contemplated, was sufficient. *See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350–51 (9th Cir. 1999) (concluding that there was "at least some notice" when the court stated at a hearing that it intended to modify a previous judgment); *Penthouse*, 792 F.2d at 950 (holding that, although the district court did not provide the defendant with formal notice of a possible injunction, injunctive relief was proper because the defendant was aware of the potential injunction based on various filings by the parties and arguments at trial).

The district court also gave the State an adequate opportunity to be heard. It permitted the State to respond orally at the hearing and to submit a further written response. What's more, the State had more than a month to prepare its

written submission. In its order modifying the injunction, the court acknowledged receipt of the parties' submissions and stated that it had considered the arguments made therein, as well as those made at the hearing. The State thus had "[t]he opportunity to present reasons . . . why [the] proposed action should not be taken." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). We, therefore, conclude that the State had an adequate opportunity to respond. *See id.*

The State's arguments in support of its contention that it did not receive notice and an opportunity to be heard are unpersuasive. The State contends first that the district court's modification to the injunction was unfair because it was made in response to a request by Plaintiffs to hold the State in contempt, which required the State to make a different showing than a motion to modify the injunction would have. We find no merit to this argument. Any unfairness that might have resulted from modifying the 2007 Injunction in response to the motion for contempt was cured when the court informed the State that it was instead considering a modification and gave the State an opportunity to respond in writing to the proposed changes. Moreover, a district court may *sua sponte* order or modify injunctive relief. *See, e.g.*, *Clement v. Cal. Dep't of Corrs.*, 364 F.3d 1148, 1150 (9th Cir. 2004); *see also Brown v. Plata*, 131 S. Ct. 1910, 1946 (2011) (recognizing the district court's inherent power to modify injunctive relief). The district court here was thus not limited to ordering the relief requested by Plaintiffs and acted well within its authority in modifying its previous order.

The State next contends that it had no meaningful opportunity to respond because the Modified Injunction was a foregone conclusion after the June 7, 2012, hearing and its

terms were not open for debate. This contention, however, is directly contrary to the district court's express statement at the hearing that it would give the State an opportunity to weigh in and its statement in the order modifying the injunction that it had considered the State's arguments. The State's contention, that despite these clear pronouncements, the district court ignored the State's arguments is purely speculative and warrants no further consideration. We, therefore, reject the State's contention that the injunction was issued without notice and an opportunity for it to respond.

IV.

Plaintiffs assert that the State waived the arguments that the statewide scope of the Modified Injunction is unsupported by the evidence and that the Modified Injunction conflicts with various state laws and the CBA. We agree.

"'Although no bright line rule exists to determine whether a matter [h]as been properly raised below, an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it.'" *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012) (quoting *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 998, 992 (9th Cir. 2010) (alteration in original)). We have no trouble concluding that the State waived the argument that the injunction is invalid because it purportedly conflicts with state law and the CBA. The State made no mention of these alleged conflicts before the district court. *See id.*; *see also Komatsu, Ltd. v. States S.S. Co.*, 674 F.2d 806, 812 (9th Cir. 1982) (deeming an issue waived when the appellant had "relied . . . exclusively" on other arguments below).

Whether the State waived its challenge to the statewide scope of the injunction is a closer question. We conclude, however, that the State waived this argument as well. In its submission to the district court, the State made some contentions that are arguably relevant to its current challenge to the scope of the injunction. It argued, for example, that "there was neither a factual nor legal basis for the proposed expansion." It did not, however, make any of the specific scope arguments that it raises on appeal; nor did it provide any detail that would have permitted the district court to evaluate its claim that systemwide changes were unwarranted. The only arguments it made were directed at purported conflicts with the PLRA, a separate question. We, therefore, conclude that the State did not preserve its challenge to the statewide scope of the injunction. *See Komatsu*, 674 F.2d at 812.

Although "the rule of waiver is a discretionary one," *see Ruiz*, 667 F.3d at 1322 (internal quotation marks and citation omitted), we find no basis on which to exercise our discretion in the State's favor in this case. We have stated that we may exercise our discretion to consider a waived issue under three circumstances:

> (1) in the exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a new issue arises while appeal is pending because of a change in the law, and, (3) when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.

*Id.* (internal quotation marks and citation omitted). The first and second circumstances have no application here: An exception is not necessary to prevent a miscarriage of justice or preserve the integrity of the judicial process, and there was no relevant change of law while the State's appeal was pending. *See id.* The third circumstance might permit us to consider whether the injunction conflicts with state law and the CBA, because these are purely legal questions, but no exception would permit us to consider the mixed factual and legal question of whether the evidence was sufficient to support the scope of the injunction. *See id.*

But even if we have discretion to review these arguments notwithstanding the State's waiver, we decline to do so. The State has no excuse for its failure to raise these arguments below. Unlike cases in which we have exercised our discretion to consider arguments that were not raised below, the State had ample opportunity to craft its response to the district court. *See, e.g.*, *United States v. Kaczynski*, 239 F.3d 1108, 1113 (9th Cir. 2001) (considering on appeal of a habeas petition the government's argument that the petitioner had procedurally defaulted because the district court had summarily denied the petition, so that the government had no opportunity to argue default). And there is no special feature of this case that persuades us that we should consider the arguments now raised despite the State's waiver. *Cf. In re Neuton*, 922 F.2d 1379, 1384 (9th Cir. 1990) (holding that a *pro se* litigant did not waive an argument that he neglected to develop fully before the district court because he had been "led astray by the shifting legal theories" that had governed the case).

In sum, we conclude that the State waived its argument that the injunction conflicts with state law and the CBA and

that the evidence was insufficient to warrant systemwide relief, and we decline to exercise our discretion to consider those arguments.

## V.

Two of the State's challenges to the Modified Injunction remain. First, the State contends that the Modified Injunction is invalid in its entirety because it violates the PLRA. Second, the State contends that the section of the Modified Injunction appointing the expert witness to resolve disputes between the parties is invalid because the district court exceeded its authority in ordering the expert witness to act in this capacity. We hold that the Modified Injunction does not violate the PLRA. We do agree with the State, however, that the section setting forth the expert witness' authority and duties is invalid.

## A.

The Modified Injunction mandates procedures for investigating and recording alleged violations of inmates' federal rights and the court's orders, enforcing disciplinary action where needed, and resolving disputes regarding these matters. *See Armstrong*, 2012 WL 3638675, at *10–*12. As to tracking, the Modified Injunction mandates that the State track any allegations that any member of the Plaintiff class did not receive access to services, programs, activities, accommodations, or assistive devices required by the remedial plan, the ADA, the RA, and other court orders. *Id.* at *10. Every allegation must be tracked, regardless of whether the alleged non-compliance was unintentional, unavoidable, done without malice, done by an unidentified actor, or later remedied. *Id.* The log must list the prison at

which the incident occurred, the prisoner and employee(s) involved, the date of the allegation, the date the investigation was initiated and completed, the identity of the investigator, the result of the investigation, the number of prior allegations against the employee(s) involved, and the action taken, if any. *Id.* The district court further ordered that the logs must be produced to Plaintiffs' counsel monthly. *Id.* The mandate that every allegation be logged directly responds to the State's practice of logging only certain reports. *Id.* at *8.

The district court also set out specific requirements relating to the State's investigation of alleged deprivations. *Id.* at *11. It mandated that the State must investigate all allegations of employee non-compliance, commence the investigation within ten business days of notice of the allegation, and produce a written report on the investigation. *Id.* Like the reporting requirements, this mandate directly responds to the State's practice of only investigating some allegations and the long delays in the commencement of those investigations that did occur. *Id.* at *8–*9. The injunction grants Plaintiffs' counsel access to the written reports produced as a result of these investigations and all documents used in making the reports, with employees' names replaced with unique identifiers to protect their privacy. *Id.* at *11. The injunction also permits Plaintiffs' counsel to interview individuals who produced information relied upon in an investigation. *Id.*

The Modified Injunction further provides for corrective action and discipline. It mandates that when an investigation reveals employee non-compliance, the State must comply with the procedures set out in the 2008 Memo and the prison systems' operations manual, and that all disciplinary

determinations must be produced to Plaintiffs' counsel, upon request. *Id.*

Finally, the injunction delegates to the court's expert witness, appointed pursuant to Federal Rule of Evidence 706, the power to resolve disputes between Plaintiffs' counsel and the State regarding the above matters. *Id.* at *11–*12. Section D specifically deals with the expert witness' duties. That section provides first that the parties shall initially attempt to resolve any dispute through negotiation. *Id.* at *11. It then provides specific procedures for resolving disputes if negotiation is unsuccessful. Section D.2. provides:

> If the parties are unable to resolve the dispute informally, Plaintiffs' counsel may request that the Court's expert review and resolve the matter. Depending on the nature of the dispute, the Court's expert shall resolve disputes about the production of information, determine whether non-compliance occurred or, if it did, whether corrective action should be initiated. . . . Administrative decisions made by the Court's expert pursuant to this section shall be final as between Plaintiffs and Defendants.

*Id.* at *11. Section D.3. provides that the expert will exercise similar authority with regard to whether certain incidents set forth in the pleadings constitute non-compliance. *Id.* at *12.

We conclude that the Modified Injunction complies with the PLRA. The PLRA provides, in relevant part that

> [p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1). Under the PLRA, injunctive relief must "heel[] close to the identified violation." *Armstrong I*, 275 F.3d at 872 (internal quotation marks omitted). The court may provide guidance and set clear objectives, but it may not "attempt to 'micro manage'" prison administration, *id.* at 873, or order relief that would "require for its enforcement the continuous supervision by the federal court over the conduct of [state officers]," *id.* at 872 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 501 (1974) (alteration in original)). The overarching inquiry is "whether the same vindication of federal rights could have been achieved with less involvement by the court in directing the details of defendants' operations." *Armstrong II*, 622 F.3d at 1071.

The district court made the findings mandated by the PLRA, *Armstrong*, 2012 WL 3638675, at *8, and those findings were not erroneous.[2] *See* 18 U.S.C. § 3626(a)(1). First, the Modified Injunction was necessary to correct the

---

[2] While we conclude that the Modified Injunction complies in full with the PLRA, we nonetheless vacate Section D of the Modified Injunction on other grounds. *See* Part V.B., *infra.*

violations of Plaintiffs' federal rights. The district court's finding on this point was supported by the facts before it when it issued the 2007 Injunction and additional evidence submitted in support of the contempt motion. In issuing the 2007 Injunction, the district court found a litany of ADA and RA violations, which are not (and cannot be) contested in this proceeding. *Armstrong v. Schwarzenegger*, No. 4:94-cv-2307 (N.D. Cal. Jan 18, 2007). It further found that an effective accountability and tracking system was necessary to prevent continued rights' violations because the failure to track disabled inmates' grievances and thus to respond to accommodation requests underlay the violations of their federal rights. *Id.* This conclusion was sound and consistent with other courts' holdings. *See, e.g.*, *Armstrong II*, 622 F.3d at 1073–74 (noting the importance of tracking in ensuring ADA compliance); *Morales Feliciano v. Rullan*, 378 F.3d 42, 55–56 (1st Cir. 2004) (noting the importance of accountability in ensuring the long-term success of the health care system in Puerto Rico's prisons); *see also Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 896 (N.D. Cal. & E.D. Cal. 2009) (three-judge panel) (affirming the importance of accountability in preventing degrading and humiliating prison conditions from becoming routine and permissible).

The evidence presented in the contempt motion demonstrated that by 2012 – a full five years after the order to track and record compliance with the remedial plan and the court's orders – there had been no meaningful improvement to the State's tracking and accountability system. The evidence before the district court in support of Plaintiffs' contempt motion demonstrated that the tracking and accountability system developed by the State had failed and that, as a result, class members still experienced delays in having their grievances processed and redressed (if they were

processed and redressed at all).  The record shows numerous instances at multiple institutions in which prisoners had reported that they were deprived of a disability accommodation, but no incident was logged.  This systemic failure to record alleged violations supports the district court's finding that the State's accountability system was not functioning as intended, *i.e.*, to hold prison administrators accountable and ensure that disabled inmates' rights were protected.[3]

While the State eventually investigated the allegations identified by Plaintiffs in their contempt motion and explained its reasons for failing to record them, these investigations were commenced only after Plaintiffs filed their motion to hold the State in contempt for failing to investigate these precise alleged violations.  For that reason, these belated investigations do not persuade us that the State was fulfilling its accountability obligations.  In fact, the timing of these investigations persuades us of just the opposite: that the State has continued to shirk its duty to investigate and track alleged violations of the remedial plan, the court's orders, and federal statutory law.

Based on the evidence before it, we hold that the district court did not err in concluding that the State had failed to

---

[3]  The district court was clear that the question before it did not involve whether the State had, in fact, failed to provide appropriate accommodations to inmates with disabilities.  *Armstrong*, 2012 WL 3638675, at \*8.  The district court's only finding – and the only one we affirm today – is that the evidence showed that the State's accountability system had failed and that modifications to the injunction were required. We, like the district court, do not comment as to whether the incidents identified by Plaintiffs' counsel in their contempt motion constitute violations of the remedial plan, the RA, the ADA, or court orders.

fulfill the accountability requirements mandated by its previous injunction. And because the accountability system was not effectively tracking inmates' needs and ensuring the receipt of needed accommodations, the district court did not err in finding that a modification to the accountability system was necessary. *See Plata*, 131 S. Ct. at 1946; *Morales Feliciano*, 378 F.3d at 55 (noting that the district court was within its discretion to order additional relief when its previous orders had failed to protect inmates' rights).

Our conclusion that the district court did not err in finding a modification to the injunction necessary does not end our inquiry. We must also consider whether the modifications it ordered complied with the PLRA's requirements that injunctive relief be narrowly drawn and no broader or more intrusive than necessary to correct the violations of federal rights. *See* 18 U.S.C. 3626(a)(1). We answer that question in the affirmative.

The Modified Injunction was narrowly tailored and no broader than necessary to address the federal violations. The changes ordered by the district court specifically tracked the ways in which the State's prior accountability system had failed: The district court found that the system had failed because the State had not investigated and logged all allegations and so ordered the district court to investigate and log all allegations. The district court further found that this deficiency existed across California's prison institutions, and accordingly ordered relief that would apply to all of the State's facilities. The modification thus matched the deficiency in both scope and kind. We, therefore, conclude that the Modified Injunction was narrowly tailored and not overbroad. *See Clement*, 364 F.3d at 1153 (concluding an injunction that prohibited the prison from banning materials

because their source was the internet was narrowly tailored and no broader than necessary to remedy a policy that was unconstitutional for the reason that it banned materials based solely on their source).

We also conclude that the Modified Injunction was no more intrusive than necessary to address the federal violations. The changes relate only to accountability and tracking. The Modified Injunction says nothing about how the State should implement compliance with the remedial plan or provide disability accommodations to prisoners; it provides no mandates for how the prison should run its facilities, house prisoners, or conduct its daily administration. In this order, as in previous orders, "the thorough and extremely patient district judge did not attempt to 'micro manage'" the prison's administration, *Armstrong I*, 275 F.3d at 872, or involve herself closely or extensively in directing the prison's operations, *Armstrong II*, 622 F.3d at 1071.

We recognize that the district court gave the State several specific instructions on how to implement its accountability system. While this might in some cases be a cause for concern, it was appropriate here. A court may, as the district court did here, provide specific instructions to the State without running afoul of the PLRA. *See Armstrong I*, 275 F.3d at 858–59 & n.15 (affirming an injunction that included various specific instructions to the State, such as requiring it to hire an ADA coordinator and provide certain accommodations at parole hearings, among other mandates). While the injunction here might leave the State less discretion than injunctions typically approved in the PLRA context, we conclude that the level of intrusiveness is acceptable based on the history and circumstances of the case.

Disabled inmates have been litigating to ensure that the State provides them with needed accommodation for over two decades – and yet the State still has a long, long way to go before it meets its obligations to these prisoners. The ongoing, intractable nature of this litigation affords the district court considerable discretion in fashioning relief. *See Morales Feliciano*, 378 F.3d at 54–55; *see also Plata*, 131 S. Ct. at 1946 (noting that once the district court invokes its equitable powers, its authority to modify a decree of injunctive relief is particularly broad and flexible). Relief that might have raised concerns about breadth and intrusiveness in the first instance is acceptable in this context, because the district court "has attempted narrower, less intrusive alternatives – and those alternatives have failed . . . ." *See Morales Feliciano*, 378 F.3d at 55.

The First Circuit confronted a similar situation in litigation involving Puerto Rico's prison system, where constitutional violations pertaining to the delivery of health care were "substantial in both scope and degree" and had "defied correction for more than two decades." *Id.* at 54. We face the same problem here. As we have previously noted, litigation in this matter has been ongoing for decades and the State has "resisted complying with [its] federal obligations at every turn." *Armstrong v. Brown*, 732 F.3d 955, 957 (9th Cir. 2013) ("*Armstrong III*"). Through a series of narrowly-drawn, carefully-crafted, and thorough orders, the district judge here, like the district judge overseeing the Puerto Rico prison litigation, "has tried more conventional methods, but found them wanting." *See Morales Feliciano*, 378 F.3d at 54. "This record of abject failure matters in the narrowness-need-intrusiveness inquiry." *Id.* at 55. Because the district court has previously tried to correct the deficiencies in California's prisons' compliance with the ADA and RA through less

intrusive means, and those attempts have failed, relief prescribing more specific mechanisms of compliance is appropriate. *See id.* at 54–56; *see also Plata*, 131 S. Ct. at 1946.

As noted above, the core PLRA inquiry is "whether the same vindication of federal rights could have been achieved with less involvement by the court in directing the details of defendants' operations." *Armstrong II*, 622 F.3d at 1071. The State, through its conduct over the past twenty years, has proven that the same vindication of federal rights cannot be achieved with less involvement by the district court. The State has failed to suggest – let alone implement – any viable means to ensure accountability and protect the Plaintiff class that is narrower or less intrusive than the Modified Injunction, despite ample time and opportunity to do so. Given that the State has failed to present the district court or this court with "any realistic alternative" to the Modified Injunction, we find its protestations that such alternatives exist to be hollow. *Plata*, 131 S. Ct. at 1941; *see also Armstrong II*, 622 F.3d at 1071 (noting that the State did "not suggest any means to protect class members' rights under the ADA that [were] more narrow or less intrusive than those ordered by the district court"). Based on these circumstances, we conclude that the Modified Injunction complies with the PLRA. *See* 18 U.S.C. § 3626(a)(1); *Armstrong II*, 622 F.3d at 1071.

## B.

While we find no error with regard to the PLRA, we cannot approve Section D of the Modified Injunction as it is currently drafted. As noted above, Section D provides for dispute-resolution procedures in the event that Plaintiffs'

counsel contests the State's decision on the results of an investigation into alleged non-compliance, the production of information, or a decision on corrective action. *Armstrong*, 2012 WL 3638675, at *11–*12. Section D.1 provides that, in the event of a dispute, Plaintiffs' counsel shall provide notice to the State, to which the State must respond within 10 business days, and the parties shall attempt to resolve the matter through negotiation. *Id.* at *11. We find no error in this provision.

Sections D.2 and D.3, however, present a more difficult question. As described above, Section D.2 provides that the expert witness shall resolve disputes between Plaintiffs' counsel and the State about whether non-compliance has occurred, the production of information, and the institution of corrective action. *Id.* Section D.3 gives the expert witness similar authority to decide whether certain incidents alleged in the pleadings constitute non-compliance with the remedial plan. *Id.* at *12. The authority delegated in Sections D.2 and D.3 permits the expert to make findings that go to the very heart of this litigation – compliance with the remedial plan – and his authority includes responsibility for making findings of fact and conclusions of law, as necessary to assess non-compliance. Sections D.2 and D.3 make these decisions by the expert "final," *id.* at *11–*12, and provide no mechanism for review by the district court.

We conclude this delegation of authority to the Rule 706 expert is impermissible. A Rule 706 expert typically acts as an advisor to the court on complex scientific, medical, or technical matters. *See, e.g.*, *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014); *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1209 (9th Cir. 2004). The dispute resolution authority granted to

the expert in this case is beyond the scope of the duties that may be assigned to a Rule 706 expert. We have never approved a Rule 706 expert to act in an adjudicative capacity with such finality as prescribed in Sections D.2 and D.3 of the Modified Injunction. While we have approved the appointment of non-judicial officers to make recommendations and resolve disputes ancillary to complex litigation, those appointments specifically limited the expert to making recommendations subject to review by the district court. *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1097 (9th Cir. 2002) (approving the appointment of a technical advisor to assist the district court in monitoring compliance); *Stone v. City & Cnty. of S.F.*, 968 F.2d 850, 852, 863 (9th Cir. 1992) (approving the appointment of a special master to investigate, report, and make recommendations to the city and the court).[4]

Our decision in *Napster* is particularly instructive. There, we approved the district court's use of a technical advisor after specifically noting that "[a]t no time did the technical

---

[4] Our sister circuits have similarly approved the appointment of non-judicial officers to act in advisory capacities only. *See, e.g.*, *SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (noting that the court-appointed receiver was an officer of the court whose legal and factual findings must be approved by the district court); *Reilly v. United States*, 863 F.2d 149, 157–58 (1st Cir. 1988) (finding no error in the district court's use of a technical advisor to instruct the judge on complex issues, but noting that the delegation would have been impermissible if the advisor made independent findings on facts outside the record); *Ruiz v. Estelle*, 679 F.2d 1115, 1159–63, *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982) (noting that it was permissible for the district court to appoint a special master to assist in the implementation of its orders by holding hearings on disputed matters and making recommendations to the district court, so long as the special master's findings were not accorded the presumption of correctness).

advisor displace the district court's judicial role" and "[t]he technical advisor never unilaterally issued findings of fact or conclusions of law regarding Napster's compliance." *Napster*, 284 F.3d at 1097. Here, Sections D.2 and D.3 do precisely what we suggested in *Napster* was impermissible: delegate to the Rule 706 expert the power unilaterally and conclusively to make findings of fact and conclusions of law regarding the State's compliance with the remedial plan and its federal obligations.

While the district court might have intended the expert's decision to be subject to review or appeal, that intention is not reflected in its order. As currently drafted, the injunction does not provide any mechanism for review of the expert's decisions by the district court and so risks permitting the expert to "displace the district court's judicial role." *Id.* We therefore cannot affirm this part of the Modified Injunction. *See id.*; *see also Kimberly v. Arms*, 129 U.S. 512, 524 (1889) ("[The court] cannot, of its own motion, or upon the request of one party, abdicate its duty to determine by its own judgment the controversy presented, and devolve that duty upon any of its officers.").

We therefore must vacate Sections D.2. and D.3 of the Modified Injunction and remand the matter to the district court to remedy the errors we have identified. We are confident that the able district judge can craft an appropriate procedure under which a party dissatisfied with the expert's recommendations can obtain district court review of that recommendation. For example, the district court may permit the expert to function within the limits suggested by *Napster*, by providing that the expert may present recommendations, but may not issue findings of fact or conclusions of law. *See* 284 F.3d at 1097. The district court could also employ a

procedure similar to the one provided for in the Magistrates Act, for review of a report and recommendation by a magistrate judge. *See* 28 U.S. C. § 636. We also note that the PLRA itself provides for the appointment of a special master "[i]n any civil action in a Federal court with respect to prison conditions . . . ." 18 U.S.C. § 3626(f). Finally, we observe that Rule 706 does not even necessarily apply to *non-testifying* experts, although district courts retain inherent authority to appoint technical advisors in appropriate cases. *See Ass'n of Mexican-American Educators v. California*, 231 F.3d 572, 590–91 (9th Cir. 2000) (en banc). What is important is that "[t]he role of a technical advisor . . . be carefully defined and limited to reduce the risk that the advisor will usurp the role of the court as factfinder . . . ." *Id*. at 612 (Tashima, J., dissenting).

We do not mean to circumscribe the district court's discretion by the listing of these examples. What the district court must do on remand is to revise Sections D.2 and D.3 of the Modified Injunction to comply with our precedent.

## VI.

For the reasons set forth above, we affirm all portions of the Modified Injunction, except Sections D.2 and D.3. We vacate Sections D.2 and D.3 and remand to the district court with instructions to revise the Modified Injunction in a manner consistent with this Opinion. The parties shall bear their own costs on appeal.

**AFFIRMED in part, VACATED and REMANDED in part.**